### In re HICKEY PROPERTIES, LTD., Debtor.

**Bankruptcy No. 94–10180.**

United States Bankruptcy Court, D. Vermont.

May 1, 1995.

C. O'C. Reis, Obuchowski & Reis, Bethel, VT, for Hickey Properties Ltd. (debtor).

G.C. Gebauer, D. Weiss and D. Wolinsky, Saxer Anderson Wolinsky & Sunshine, Burlington, VT, for WHBB Real Estate Ltd. Partnership (WHBB).

## MEMORANDUM OF DECISION DENYING CREDITOR'S MOTION TO CREDIT BID AT AUCTION

FRANCIS G. CONRAD, Bankruptcy Judge.

WHBB, a secured creditor, moves[1] for permission to credit bid the entire amount of its claim at a proposed post-confirmation auction of the equity interest[2] in Debtor, a limited partnership that owns and operates the Brattleboro Inn and Conference Center. WHBB holds three mortgages on the Inn real estate, and a security interest in all inventory, equipment, machinery, accounts and contract rights. Although WHBB holds a security interest in substantially all of the assets of Debtor, it does not have a security interest in Debtor's equity interest.

Debtor's Plan proposed to increase the value of the Inn, currently in the neighborhood of $1.1 million,[3] to $3.2 million by investing about $855,000 to renovate and rehabilitate the premises. The proposed Plan put most of the risk that the investment in renovations won't work out on WHBB, because it depends on post-confirmation borrowing of $600,000 of the total required. This new loan, Debtor says, would be secured by a superpriority lien that would prime WHBB.[4] To raise the balance, the Plan called for the sale of Debtor's equity interest for $250,000.[5] In a prior unpublished Memorandum of Decision issued in this case, we held that the Plan must provide for the sale of the equity interest in Debtor to the highest bidder at an auction. *In re Hickey Properties, Ltd.*, No. 94–10180, slip op. at 9, 1995 WL 264023 at *3 (Bkrtcy.D.Vt. March 23, 1995).

Debtor's Plan proposes to bifurcate WHBB's claim, treating about $1 million as secured. The allowed balance of WHBB's total $2.9 million claim is treated as unsecured. This treatment of WHBB's claim gives it the right under § 1111(b) to elect how its claim shall be treated. That right had not been exercised at the time of this motion. WHBB seeks permission to credit bid the full amount of its claim at the auction. Its motion asked that we determine the matter prior to the hearing on confirmation, so that it could make an informed decision on whether to make the § 1111(b) election. We hold that WHBB is not entitled to credit bid any portion of the amount of its claim.

WHBB argues that §§ 1129(b)(2)(A)(ii) and 363(k) require that it be given the right to credit bid. We disagree. Debtor attempted to confirm the Plan over WHBB's objection. The Code requires that the treatment accorded dissenting creditors be "fair and equitable." § 1129(b)(1). In the case of secured creditors, one of the alternative means for ensuring "fair and equitable treatment" is to provide

> for the sale, subject to section 363(k) of this title, of any property that is *subject to the liens* securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph.

---

1. Our subject matter jurisdiction over this controversy arises under 28 USC § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (K), (L), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

2. By "equity interest," we mean the ownership interests held by the partners who control Debtor. Debtor's liabilities substantially exceed its assets, so there is there is no "equity" in the usual sense.

3. In a prior unpublished Memorandum of Decision in this matter, we determined that the value of Debtor was equal to $1.1 million plus whatever additional sum, if any, was generated by the proposed auction of the equity interest in Debtor. *In re Hickey Properties, Ltd.*, No. 94–10180, slip op. at 7–8, 1995 WL 264023, *3 (Bkrtcy.D.Vt. March 23, 1995).

4. In a separate Memorandum of Decision that we have issued contemporaneously with this opinion, we denied confirmation of Debtor's Plan on the grounds that 11 U.S.C. § 364(d)(1) does not authorize the Debtor to secure post-confirmation borrowing with a superpriority lien. *In re Hickey Properties Ltd.*, 181 B.R. 173, 174 (Bkrtcy.D.Vt.1995).

5. Debtor's Plan proposes to raise an additional $55,000 for capital improvements out of its ongoing operations.

§ 1129(b)(2)(A)(ii). Section 363(k), in turn, provides:

> At a sale ... of property that is *subject to a lien* that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

WHBB's argument falters on a fundamental point. Although it holds a security interest in virtually all of Debtor's assets, it has no security interest in Debtor's equity interest. The interest in a partnership is owned by third parties. The Plan calls for termination of the partners' equity interests and sale of those interests at auction to the highest bidder. As Massachusetts Bankruptcy Judge James F. Queenan, Jr., has observed, a sale of equity "is quite different from an asset sale."

> [A]n asset sale will bring about realization by the lender of the value of [its] security interest because a secured creditor is protected [by §§ 1129(b)(2)(A)(ii) and 363(k) ] when [its] collateral is sold. This protection is not present in a [sale of the equity interest].... Unlike an asset sale, [sale of the equity interest] leaves the collateral undisturbed, presenting no opportunity for the secured party to obtain the ... value of [its] collateral.

Queenan, Standards for Valuation of Security Interests in Chapter 11, 92 Com.L.J. 18, 58–59 (1987). WHBB has a lien on Debtor's assets, not on its equity interests. Thus neither §§ 1129(b)(2)(A)(ii) nor 363(k) apply because the property to be sold is not subject to any lien of WHBB. Accordingly, we hold that WHBB is not entitled to credit bid its claim in any auction that may be held of Debtor's equity interests.

A bench order implementing the views expressed in this Memorandum of Decision was entered at the conclusion of the April 26, 1995 hearing in this matter.